UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

MARIO RODRIGUEZ,

                    Plaintiff,

       *-Against-*

The City of New York, and New York City Police Officer
Darren Guerriere, individual and in his official capacity,

                    Defendants.

Civil Action No.: 14-1879
(ENV)(VVP)

---

# FIRST AMENDED COMPLAINT

CARTER & ASSOCIATE
ATTORNEYS, PLLC
ATTORNEY FOR PLAINTIFF
224 West 35th Street, Suite 512
New York, New York 10001
(212) 216-9134 Telephone
(888) 711-4420 Facsimile

## Table of Contents

PRELIMINARY STATEMENT ............................................................................... 1

SUMMARY OF CLAIMS ................................................................................... 2

**A.**    MR. RODRIGUEZ'S CLAIMS AGAINST THE DEFENDANTS ............... 2

**B.**    FACTUAL BACKGROUND ..................................................................... 5

    **1.** The Parties and Other Relevant Persons and Entities ................................... 5
    **2.** Mr. Rodriguez's Arrest on June 2, 2013 .................................................... 6
    **3.** Officer Guerriere, Operating Pursuant to Municipal Policy ........................ 8

**C.**    CAUSES OF ACTION .......................................................................... 12

    **A. FIRST CAUSE OF ACTION: The Defendant Guerriere Maliciously Prosecuted Mr. Rodriguez where Guerriere Commenced, Instigated and Continued Criminal Proceedings against Mr. Rodriguez in Absence of Probable Cause, with Actual Malice** ...................................................................... 12

    **B. SECOND CAUSE OF ACTION: Defendant Guerriere Falsely Arrested the Plaintiff Mario Rodriguez** ........................................................................ 14

    **C. THIRD CAUSE OF ACTION: Defendant Guerriere's Malicious Abuse of Criminal Process** ........................................................................................ 15

    **D. FOURTH CUASE OF ACTION: Defendant Guerriere's Conduct of Fabricating Claims of Mr. Rodriguez's Alleged, Criminality as Discussed Herein, Violated Mr. Rodriguez's Fifth and Fourteenth Amendments U.S. Constitutional Rights not to be Deprived of His Liberty as a Result of said Fabrication of Evidence by the Defendant** ................................................................................... 16

    **E. FIFTH CAUSE OF ACTION: Defendant Guerriere's Conduct of Fabricating Claims of Mr. Rodriguez's Alleged Criminality as Discussed Herein Constitutes Negligent Infliction of Emotional Distress, Reckless Infliction of Emotional Distress or Intentional Infliction of Emotional Distress** ......................... 17

F. **SIXTH CAUSE OF ACTION: The NYPD's Policing Practices, Policies, Procedures, Protocol and Customs Pursuant to which the Defendant Guerriere was Operating, in Arresting and Charging Mr. Rodriguez, Renders the City of New York Liable for the Defendant Guerriere's Malicious Prosecution of Mr. Rodriguez**............................................................................................................18

G. **SEVENTH CAUSE OF ACTION: The NYPD's Policing Practices, Policies, Procedures, Protocol and Customs Pursuant to which the Defendant Guerriere was Operating, in Arresting and Charging Mr. Rodriguez, Renders the City of New York Liable for the Defendant Guerriere's Malicious Abuse of Criminal Process of Mr. Rodriguez**...................................................................................................20

**D.** Jurisdiction and Venue..................................................................................................22

**E.** Request for Relief .........................................................................................................22

**F.** Jury Demand ................................................................................................................22

## PRELIMINARY STATEMENT

PLAINTIFF, MARIO RODRIGUEZ, by and through counsel, alleges the following upon information and belief, except as to those allegations concerning Mr. Rodriguez, which are alleged upon personal knowledge. Mr. Rodriguez's information and belief are based upon among other things, his investigation, as well as Mr. Rodriguez's personal experience of the claims in question against the Defendants. Plaintiff believes that further substantial evidentiary support will exist for the allegations after a reasonable opportunity for discovery.

## SUMMARY OF CLAIMS

### A. MR. RODRIGUEZ'S CLAIMS AGAINST THE DEFENDANTS

1.    The Plaintiff brings an action pursuant to 42 U.S.C. § 1983 for malicious prosecution against the Defendant Guerriere, individually and in his official capacity, where Guerriere, acting without probable cause, and acting in his official capacity as a New York City Police Officer, commenced, instigated and/or continued the underlying criminal action at issue, where Guerriere made false claims against Mr. Rodriguez, for purposes of obtaining the collateral objective of punishing Mr. Rodriguez for being a Good Samaritan, where Guerriere's incredible criminal claims formed the sole basis of the State of New York's underlying criminal charges against Mr. Rodriguez, where the Grand Jury convened for purposes of considering Guerriere's criminal allegations against Mr. Rodriguez for purposes of an indictment, decided on or about August 16, 2013 that the underlying criminal claims against Mr. Rodriguez must be dismissed, and all the criminal charges were so dismissed.

2.    The Plaintiff brings an action pursuant to 42 U.S.C. § 1983 for malicious prosecution against the Defendant City of New York where Guerriere's state action of determining whether there was probable cause to arrest, arresting and charging of Mr. Rodriguez was pursuant to official municipal policy in the form of the New York City Police Department's policing practices, policies, procedures, protocol, and customs that were department-wide, such that they had the force of law, where inadequate supervision of arrests including Guerriere's arrest of Mr. Rodriguez, resulted in Guerriere's arrest and prosecuting of Mr. Rodriguez in absence of probable cause for purposes of obtaining the collateral objective of punishing Mr. Rodriguez for being a Good Samaritan, where Guerriere's incredible criminal claims formed the sole basis of the State of New York's underlying criminal charges against

2

Mr. Rodriguez, where the Grand Jury convened for purposes of considering Guerriere's criminal allegations against Mr. Rodriguez for purposes of an indictment, decided on or about August 16, 2013 that the underlying criminal claims against Mr. Rodriguez must be dismissed, and all the criminal charges were so dismissed.

3.     The Plaintiff brings an action pursuant to 42 U.S.C. § 1983 for malicious abuse of criminal process against Guerriere, individually and in his official capacity, where Guerriere, acting within his official capacity as a New York City Police Officer, commenced, instigated and/or continued the underlying criminal action at issue, in which case regular criminal process issued, with Guerriere intending to do harm to Mr. Rodriguez without excuse or justification, using the aforementioned regular process in a perverted manner to obtain the collateral objective of punishing Mr. Rodriguez for being a Good Samaritan, where Guerriere's incredible criminal claims formed the sole basis of the State of New York's underlying criminal charges against Mr. Rodriguez, which the Grand Jury convened to consider Guerriere's criminal claims decided to dismiss such charges on August 16, 2013.

4.     The Plaintiff brings an action pursuant to 42 U.S.C. § 1983 for malicious abuse of criminal process against the Defendant City of New York where Guerriere's state action of determining whether there was probable cause to arrest, arresting and charging of Mr. Rodriguez was pursuant to official municipal policy in the form of the New York City Police Department's policing practices, policies, procedures, protocol, and customs that were department-wide, such that they had the force of law, where inadequate supervision of arrests including Guerriere's arrest of Mr. Rodriguez, resulted in Guerriere's arrest and prosecuting of Mr. Rodriguez in absence of probable cause for purposes of obtaining the collateral objective of punishing Mr. Rodriguez for being a Good Samaritan, where Guerriere's incredible criminal

3

claims formed the sole basis of the State of New York's underlying criminal charges against Mr. Rodriguez, where the Grand Jury convened for purposes of considering Guerriere's criminal allegations against Mr. Rodriguez for purposes of an indictment, decided on or about August 16, 2013 that the underlying criminal claims against Mr. Rodriguez must be dismissed, and all the criminal charges were so dismissed.

5.     The Plaintiff brings an action pursuant to 42 U.S.C. § 1983 for false arrest/false imprisonment against Guerriere, individually and in his official capacity, where Guerriere, acting within his capacity as a New York City Police Officer, and acting without justification, actively assisted in the arrest of Mr. Rodriguez solely on the basis of Guerriere's aforementioned incredible criminal claims, where the Grand Jury convened to consider such charges, on August 16, 2013 decided to dismiss those underlying criminal charges.

6.     The Plaintiff brings an action pursuant to 42 U.S.C. § 1983 for false arrest/ false imprisonment against the Defendant City of New York where Guerriere's state action of determining whether there was probable cause to arrest, arresting and charging of Mr. Rodriguez was pursuant to official municipal policy in the form of the New York City Police Department's policing practices, policies, procedures, protocol, and customs that were department-wide, such that they had the force of law, where inadequate supervision of arrests including Guerriere's arrest of Mr. Rodriguez resulted in Guerriere's arrest and prosecuting of Mr. Rodriguez in absence of probable cause for purposes of obtaining the collateral objective of punishing Mr. Rodriguez for being a Good Samaritan, where Guerriere's incredible criminal claims formed the sole basis of the State of New York's underlying criminal charges against Mr. Rodriguez, where the Grand Jury convened for purposes of considering Guerriere's criminal allegations against Mr. Rodriguez for purposes of an indictment, decided on or about

4

August 16, 2013 that the underlying criminal claims against Mr. Rodriguez must be dismissed, and all the criminal charges were so dismissed.

      7.      The Plaintiff brings an action pursuant to 42 U.S.C. § 1983 against Guerriere, individually and in his official capacity, for violation of Mr. Rodriguez's Fifth Amendment and Fourteenth Amendment rights under the United States Constitution not to be deprived of his liberty as a result of fabricated investigatory evidence, where Guerriere knowingly fabricated false evidence and statements for purposes of presentation of such to the Queens County District Attorney's Office for criminal prosecution of Guerriere's underlying incredible criminal claims, knowing that criminal prosecution could result in the deprivation of Mr. Rodriguez's liberty, where Guerriere purposefully and knowingly submitted said false evidence for the improper purpose of punishing Mr. Rodriguez for being a Good Samaritan, where said incredible criminal claims formed the sole basis of the State of New York's underlying criminal charges against Mr. Rodriguez, where he was deprived of his liberty, commencing with his June 2, 2013 arrest and imprisonment for several days until the Queens County Grand Jury's August 16, 2013 dismissal of the Defendant's criminal charges against Mr. Rodriguez.

      8.      The Plaintiff's claims encompass claims for emotional distress.

## B.  FACTUAL BACKGROUND

### 1.    The Parties and Other Relevant Persons and Entities

      9.      Plaintiff repeats and re-states as if stated herein all averments set forth in Paragraphs "1" through "8" above.

      10.      Mr. Rodriguez is a retired Correction Officer for the New York City Department of Correction.

11.     The Defendant Darren Guerriere is Police Officer for the New York City Police Department ("NYPD").

12.     The 110th Precinct of the NYPD is the location where Mr. Rodriguez's arrest was processed on June 2, 2013.

**2.     Mr. Rodriguez's Arrest on June 2, 2013**

13.     Plaintiff repeats and re-states as if stated herein all averments set forth in Paragraphs "1" through "12" above.

14.     On June 2, 2013 Mr. Rodriguez and his common-law wife, Nidia Celes, along with their mentally retarded daughter had gone out to attend a party in honor of a family friend.

15.     Upon arriving at the party, Ms. Celes, who had driven the family to the party, was unable to find any parking except near a "no parking" area.

16.     As a result, sometime during the night Ms. Celes asked Mr. Rodriguez to check on the vehicle to make sure that she had not received a ticket.

17.     Because it was late, Mr. Rodriguez went out to check to ensure that Ms. Celes had not received a ticket.  In doing so, Mr. Rodriguez eye-witnessed an out of control driver crash his vehicle into several parked cars.

18.     Mr. Rodriguez ran to the scene of that crash to make sure that nobody was hurt. In the process of checking for any injured persons, Mr. Rodriguez attempted to hold the driver of the vehicle, who jumped out of his vehicle in an attempt to flee the scene.

19.     That individual began to assault the then sixty-eight (68) year old Mr. Rodriguez, who simply was too old to hold the much younger assailant (hereinafter "the assailant").

20.     Therefore, Mr. Rodriguez flagged down the oncoming police vehicle containing Guerriere.

6

21.     Mr. Rodriguez informed Guerriere of the assailant's crashing of the parked vehicles, Mr. Rodriguez's attempt to hold the assailant and the assailant's assault on Mr. Rodriguez.

22.     Nonetheless, Guerriere informed Mr. Rodriguez that he should stay out of police business and told Mr. Rodriguez that he would arrest Mr. Rodriguez for not staying out of police business.

23.     Therefore, Guerriere arrested Mr. Rodriguez and charged Mr. Rodriguez with having violated New York Vehicle and Traffic Laws 1192-2-A (a Felony), 1192-3 (a misdemeanor), and 509-1 driving without a license.

24.     Guerriere claimed that Mr. Rodriguez had operated the vehicle while intoxicated.

25.     Conversely, Guerriere conceded that when he came upon Mr. Rodriguez, who was then flagging Guerriere's police vehicle down, Mr. Rodriguez was not operating a motor vehicle.

26.     Nonetheless, Guerriere's complaint asserted blatant lies where he claimed that Mr. Rodriguez allegedly told Guerriere that the assailant hit Mr. Rodriguez "when I was at the red light."

27.     Guerriere's underlying criminal complaint falsely claimed that Guerriere witnessed that Ms. Celes' vehicle had damage from an accident with the assailant's vehicle.

28.     Absent from Guerriere's complaint is any claim that he had seen Mr. Rodriguez operating a vehicle while under the influence or that Guerriere had ever seen Mr. Rodriguez actually operating a vehicle.

29.     Nonetheless, Guerriere arrested and charged Mr. Rodriguez with the aforementioned incredible criminal charges.

30.     As a result of said charges, Mr. Rodriguez ended up spending several days in the confines of the New York City Department of Correction, where inmates learned that he was a former officer and assaulted Mr. Rodriguez, leaving him shoeless.

31.     It was very difficult for Ms. Celes to take care of the matters necessary to bail Mr. Rodriguez out of jail, because the two of them are the only care takers of their severely retarded daughter.

32.     On or about August 16, 2013, the Queens County Grand Jury convened to consider indictment of Guerriere's underlying criminal claims against Mr. Rodriguez decided that Guerriere's underlying criminal claims should be dismissed; and on August 16, 2013 the Grand Jury dismissed Guerriere's criminal claims against Mr. Rodriguez.

33.     On September 9, 2013, the Queens County Criminal Court for the City of New York, entered judgment of dismissal of the underlying criminal case against Mr. Rodriguez under Queens County Criminal Court Docket Number 2013QN030399.

**3.     Officer Guerriere, Operating Pursuant to Municipal Policy**

34.     Plaintiff repeats and re-states as if stated herein all averments set forth in Paragraphs "1" through "33" above.

35.     Guerriere's arrest of Mr. Rodriguez occurred pursuant to the NYPD's established protocol and procedures for "D.W.I. Detection and Arrest" (hereinafter referred to as "Detection and Arrest policy"), the NYPD's "Patrol Guide" policy, as well as the NYPD's other customary arrest practices, policies, protocol, and procedures.

36.     At the time in question, the NYPD, as well as the City of New York (i.e. New York City Council and Mayor's Office), were aware of claims that police officers' training and supervision under the aforementioned municipal policing policies, practices, protocol,

8

procedures, and customs were inadequate, such that such policing practices, policies, protocol, procedures and customs as well as the inadequate training and supervision with regard thereto, systemically resulted in the violation of the constitutional rights of citizens and residents, including Hispanics, such that Guerriere's seizure and arrest of Mr. Rodriguez pursuant to said aforementioned policing practices, policies, protocol, procedures and customs was the result of the City of New York's deliberate indifference to said rights.

37.     Despite having been found guilty in August 2013 regarding and having been made aware of claims that police officers' training and supervision as to the NYPD's policing practices, policies, protocol procedures, and customs, was inadequate such that such policing practices, policies, protocol, procedures and customs, systemically resulted in the violation of the constitutional rights of citizens and residents, the City of New York (i.e. New York City Council and the Mayor's Office), did not remedy the aforementioned inadequacies until January 2014.

38.     Those aforementioned policing policies, practices, protocol procedures, and customs were the subject of a bench trial of national prominence, before the Honorable Shira A. Scheindlin of the United States District Court for the Southern District of New York.

39.     After an exhaustive review of the evidence, Judge Scheindlin found that the NYPD's policing practices, policies, protocol, procedures, and customs had the force of law, such that they constituted municipal policy.

40.     In pertinent part, Judge Scheindlin found that the NYPD's policing practices, policies, protocol, procedures, and customs as to officers' probable cause determinations that were based heavily in New York common law, did not meet the reasonable belief standard required under the Fourth and Fourteenth Amendments of the United States Constitution, because *inter alia*, the NYPD's probable cause determination was permitted on inarticulable

9

suspicion and there was inadequate supervision of officers' arrests where the focus of officers' arrest was on productivity and there was absolutely no focus on the factual substance of officers' arrests.

41.　　Ultimately, the City of New York conceded Judge Schendlin's findings of facts and conclusions of laws, and withdrew its appeal thereof.

42.　　The NYPD's Detection and Arrest policy states in pertinent part, "[t]he goal of the New York City Police Department is to effectively enforce D.W.I. laws and thereby reduce the number of accidents and fatalities caused by these drivers."

43.　　Review of the NYPD's Detection and Arrest policy, as well as its Patrol Guide policy, reveals that a great importance is placed upon the State of New York's common and statutory laws, as to stops and arrest, generally, and the detection and arrest of D.W.I. offenders.

44.　　The NYPD's Detection and Arrest policy sets forth three (3) steps in seizing D.W.I. offenders. According to the NYPD's Detection and Arrest policy, the first phase is for officers to be on the lookout for visual "describable clues or evidence of alcohol or drug influence," as it pertains to a vehicle in motion.

45.　　The second phase, which according to the NYPD's Detection and Arrest policy, can occur in absence of the first phase, is for an officer to be on the lookout of "describable clues or evidence of alcohol or drug influence," as it pertains to an officer's "face–to–face observation interview of a driver." Those visible signs being such things as a suspect's lack of physical coordination, slurred speech, etcetera.

46.　　The third phase of the Detection and Arrest policy calls for the officer to determine whether to arrest the alleged driver, using New York's common law to determine whether there is probable cause to arrest, as instructed in the Detection and Arrest policy.

10

47.     Both the Detection and Arrest policy and the Patrol Guide policy call for heavy supervision and verification of an officer's arrest.

48.     As set forth in the Detection and Arrest policy, Guerriere is trained that in the event of an accident, a driver involved therein, at the officer's request is required to submit to a breath test and/or chemical test for alcohol.

49.     Guerriere knew that Mr. Rodriguez had been drinking, and although Guerriere knew that he had no reason to suspect that Mr. Rodriguez was driving, Guerriere nonetheless, knew that in accordance with his training that a claim that Mr. Rodriguez had been involved in an accident would result in a test for alcohol, of Mr. Rodriguez who had been consuming alcohol at the birthday party.

50.     Guerriere knew that a positive reading on such test could be used in Guerriere's fabricated story.

51.     As noted, pursuant to the Patrol Guide policy, upon returning to the precinct with Mr. Rodriguez, Guerriere's arrest of Mr. Rodriguez was to be verified.

52.     Mr. Rodriguez's alleged vehicle, which Guerriere claimed that Mr. Rodriguez had driven while under the influence of alcohol was never photographed or confiscated and transported to NYPD custody for photo and safeguarding, as mandated by the Patrol Guide policy, as well as the NYPD's other policing practices, policies, protocol, procedures and customs as to the securing of and photographing of alleged incriminating evidence.

53.     Nonetheless, during verification of Guerriere's arrest of Mr. Rodriguez, those facts were ignored, despite the requirement upon all parties to comply therewith.

11

54. Those facts were ignored, because the NYPD's policing practices, policies, protocol, procedures, and customs focused on productivity rather than the factual substance of Guerriere's arrest of Mr. Rodriguez.

55. Guerriere knew that the NYPD's policing practices, policies, protocol, procedures, and customs was not to review the factual substance of officers' arrests, and therefore he could effectuate Mr. Rodriguez's arrest on the incredible claims.

56. The City of New York's policymakers (i.e. New York City Council and the Mayor's Office), were well aware that supervision of police officers, in accordance with the NYPD's established policing practices, policies, protocol, procedures, and customs, was systemically inadequate such that the result of officers' persistent and widespread failure to act pursuant thereto, resulted in a deliberate indifference as to constitutional rights, having the force of law.

57. The City of New York had long been aware that its Officers' were mishandling the arrests of minorities for a very long time, and that the result was frequent deprivation of constitutional rights of such persons. Nonetheless, the City took no meaningful efforts to protect citizens against such deprivations until January 2014.

## C. CAUSES OF ACTION AND RELEVANT FACTUAL ALLEGATIONS

### FIRST CAUSE OF ACTION

**The Defendant Guerriere Maliciously Prosecuted Mr. Rodriguez where Guerriere Commenced, Instigated and Continued Criminal Proceedings against Mr. Rodriguez in Absence of Probable Cause, with Actual Malice**

58. Plaintiff repeats and re-states as if stated herein all averments set forth in Paragraphs "1" through "57" above.

12

59. Guerriere was affirmatively active in instigating and/or participating in Mr. Rodriguez's criminal prosecution where the Guerriere was the claimant, such that Guerriere was the moving cause of Mr. Rodriguez's prosecution.

60. Guerriere did more than merely report an alleged crime or merely possessed knowledge or merely acquiesced in or consented to the acts of the Queens County District Attorney's Office, as Guerriere came forward and presented fraudulent, false, and perjurious information to the prosecutor in the absence of a request for such information, reasonably knowing that such would be relied on by the Queens County District Attorney's Office.

61. Guerriere lied, claiming that Mr. Rodriguez stated that the assailant had hit Mr. Rodriguez, allegedly while he was operating a motor vehicle while stopped at a red light, inferring that Mr. Rodriguez had confessed to operating a motor vehicle, while under the influence.

62. Furthermore, Guerriere lied, claiming to have seen Mr. Rodriguez was party to a motor vehicle accident with the assailant's vehicle.

63. There was no probable cause for Guerriere's bringing of charges against Mr. Rodriguez as Mr. Rodriguez was never driving or operating a motor vehicle.

64. As a result, the Queens County Grand Jury impanelled to determine whether there was basis for the underlying criminal charges dismissed those underlying criminal claims against Mr. Rodriguez.

65. The purpose of Guerriere's malicious prosecution was to punish Mr. Rodriguez for being a Good Samaritan; as Guerriere termed it, Mr. Rodriguez was being punished for getting involved in the business of police officers.

13

66.     The irony of Guerriere's underlying criminal claims are that they are squarely refuted by Guerriere's claims that Mr. Rodriguez was party to a motor vehicle accident. Guerriere intentionally failed to secure the very basis of his claims, the alleged vehicle Mr. Rodriguez allegedly operated, as well as pictures of the alleged vehicle's damage in the alleged DUI fender-bender; and that Guerriere failed to do despite the fact that the NYPD's policing practices, policies, protocol, procedures, and customs, mandated that Guerriere secure of the alleged vehicle and pictures of the alleged motor vehicle accident.

**SECOND CAUSE OF ACTION**

**Defendant Guerriere Falsely Arrested the Plaintiff Mario Rodriguez**

**I.      The Defendant intended to confine Mr. Rodriguez**

67.     Plaintiff repeats and re-states as if stated herein all averments set forth in Paragraphs "1" through "66" above.

68.     On June 2, 2013, Guerriere arrested Mr. Rodriguez for purposes of taking him into custody for prosecution and resulting confinement.

69.     Guerriere knowingly prepared the false criminal complaint that resulted in Mr. Rodriguez's arrest.

**II.     Mr. Rodriguez was aware of the resulting confinement**

70.     Plaintiff repeats and re-states as if stated herein all averments set forth in Paragraphs "1" through "69" above.

71.     Mr. Rodriguez was confined to the custody of the New York City Department of Correction where he was housed in the Queens Detention Center and the Vernon C. Bain correctional facilities for several days before being released on monetary bond pending the resolution of his criminal case.

14

### III.    Mr. Rodriguez did not consent to confinement

72.    Plaintiff repeats and re-states as if stated herein all averments set forth in Paragraphs "1" through "71" above.

73.    Mr. Rodriguez challenged the criminal charges against him as well as the resulting confinement.

74.    As a result of such challenges, Mr. Rodriguez was released on bond and the Grand Jury dismissed the underlying criminal claims against Mr. Rodriguez.

### IV.    Mr. Rodriguez's confinement was not privileged

75.     Plaintiff repeats and re-states as if stated herein all averments set forth in Paragraphs "1" through "74" above.

76.    As noted herein, there was no probable cause for Mr. Rodriguez's arrest, as Guerriere undertook such custody, providing fraudulent and perjurious statements and evidence and otherwise acted in bad faith and suppressed evidence for purposes of seeking Mr. Rodriguez's prosecution and conviction for purposes of punishing Mr. Rodriguez for being a Good Samaritan.

## THIRD CAUSE OF ACTION

### Defendant Guerriere's Malicious Abuse of Criminal Process

77.    Plaintiff repeats and re-states as if stated herein all averments set forth in Paragraphs "1" through "76" above.

78.    Process regularly issued in Mr. Rodriguez's criminal prosecution.

79.    Guerriere intended to do harm to Mr. Rodriguez without excuse or justification in having Mr. Rodriguez prosecuted on Guerriere's fraudulent, perjurious and otherwise claims of bad faith and acts of bad faith (e.g. suppression evidence such as the fact the vehicle Mr.

Rodriguez arrived at the party in (i.e. Ms. Cele's vehicle), was parked and did not have damage resulting from Guerriere's alleged motor vehicle accident in question), for the purpose of punishing Mr. Rodriguez for being a Good Samaritan.

80.     Guerriere commenced, instigated and continued the proceeding against Mr. Rodriguez.

81.     The proceeding ended in Mr. Rodriguez's favor with the Grand Jury dismissing the underlying criminal claims and charges on August 16, 2013 and the Queens County Criminal Court entering judgment thereof on September 9, 2013.

82.     Guerriere's conduct implicates Mr. Rodriguez's constitutional rights not to be deprived of his liberty, where Guerriere's use of the criminal process for a purpose other than as provided for by law (i.e. to punish Mr. Rodriguez for being a Good Samaritan), violates procedural due process.

83.     As noted herein, Guerriere has acted with actual malice.

## FOURTH CAUSE OF ACTION

### Defendant Guerriere's Conduct of Fabricating Claims of Mr. Rodriguez's Alleged, Criminality as Discussed Herein, Violated Mr. Rodriguez's Fifth and Fourteenth Amendments U.S. Constitutional Rights not to be Deprived of His Liberty as a Result of said Fabrication of Evidence by the Defendant

84.     Plaintiff repeats and re-states as if stated herein all averments set forth in Paragraphs "1" through "83" above.

85.     Guerriere never conducted an objective investigation of the claimed charges against Mr. Rodriguez.

86.     Additionally, Guerriere purposefully rejected Mr. Rodriguez's reporting of the assailant's crashing into various motor vehicles at the scene and that the assailant had assaulted Mr. Rodriguez.

16

87.     And Guerriere claims of damage to Ms. Cele's vehicle were fabricated.

88.     Guerriere's intentional omission of an objective investigation was for the purpose of punishing Mr. Rodriguez for being a Good Samaritan.

89.     Guerriere was aware that Mr. Rodriguez was not driving, that the vehicle Mr. Rodriguez arrived to the party in was parked, that the assailant who crashed vehicles and assaulted Mr. Rodriguez was attempting to get away, and that Ms. Cele's vehicle did not possess the claimed damage, despite Guerriere's claims otherwise.

90.     Guerriere's intentional failure to secure Ms. Cele's vehicle pursuant to Mr. Rodriguez's arrest for purposes safeguarding and taking photos thereof, where Guerriere claimed the vehicle to be a criminal instrument and was part of a motor vehicle accident, constituted the suppression of evidence where Guerriere knew such was untrue.

## FIFTH CAUSE OF ACTION

### Defendant Guerriere's Conduct of Fabricating Claims of Mr. Rodriguez's Alleged Criminality as Discussed Herein Constitutes Negligent Infliction of Emotional Distress, Reckless Infliction of Emotional Distress or Intentional Infliction of Emotional Distress

91.     Plaintiff repeats and re-states as if stated herein all averments set forth in Paragraphs "1" through "89" above.

92.     Guerriere owed Mr. Rodriguez a duty that Guerriere would not use the capacity of his public office for personal gain in violation of Mr. Rodriguez's constitutional rights not be unreasonably deprived of his liberty and to be free from unreasonable searches and seizure.

93.     Guerriere's conduct of fabricating criminal claims for the purpose of punishing Mr. Rodriguez for being a Good Samaritan, negligently caused psychological trauma to Mr. Rodriguez, and violated Guerriere's duties.

17

94. Guerriere's conduct was so extreme in degree, as to go beyond all possible bounds of decency, such that it is atrocious, and utterly intolerable in a civilized community that a police officer would fabricate criminal charges against a citizen.

95. More than just fabricating criminal claims against Mr. Rodriguez, Guerriere knowingly used his public office to facility an unlawful prosecution of Mr. Rodriguez.

96. Guerriere's conduct was done with the intent to cause, or disregarded the substantial probability that such conduct would cause Mr. Rodriguez severe emotional distress.

97. Mr. Rodriguez's severe emotional distress was caused by Guerriere's extreme and outrageous conduct of knowingly fabricating and facilitating Mr. Rodriguez's unlawful prosecution, where Guerriere's conduct among other things resulted in Mr. Rodriguez's constant threat for his life and safety as he was housed in general population, having been a former Correction Officer for the New York City Department of Correction.

## SIXTH CAUSE OF ACTION

**The NYPD's Policing Practices, Policies, Procedures, Protocol and Customs Pursuant to which the Defendant Guerriere was Operating, in Arresting and Charging Mr. Rodriguez, Renders the City of New York Liable for the Defendant Guerriere's Malicious Prosecution of Mr. Rodriguez**

98. Plaintiff repeats and re-states as if stated herein all averments set forth in Paragraphs "1" through "97" above.

99. The NYPD's policing policies, practices, protocol, procedures and customs as to NYPD police officers' probable cause determinations, arrests, and charging of suspects, including Mr. Rodriguez, are so persistent and widespread that they have the force of law.

100. The City of New York has conceded that the NYPD's policing policies, practices, protocol, procedures and customs as to NYPD police officers' probable cause determinations, arrests, and charging of suspects are so persistent and widespread that they have the force of law.

18

101.    Guerriere's irreparably flawed probable cause determination, arresting and

charging of Mr. Rodriguez was pursuant to the NYPD's policing policies, practices, protocol,

procedures and customs such that Guerriere was operating pursuant to official municipal policy.

102.    The City of New York had been informed and were aware that prior to January

2014, the NYPD's policing policies, practices, protocol, procedures and customs were such that

they were resulting in the systemic deprivation of liberties of citizens and residents, including

Hispanics.

103.    Despite being made aware of those systemic liberty deprivations, the City of New

York did not act until January 2014 to remedy those constitutional violations, thereby remaining

deliberately indifferent thereto until such time.

104.    The NYPD's policing policies, practices, protocol, procedures and customs,

allowing Guerriere to arrest Mr. Rodriguez on less than the reasonable belief that Mr. Rodriguez

engaged in the underlying criminal activity, as required under the Fourth and Fourteenth

Amendments of the United States Constitution, was foreseeably violative of Mr. Rodriguez's

Fourth Amendment and Fourteenth Amendment rights not to be unreasonably searched or

seized.

105.    The NYPD's policing policies, practices, protocol, procedures and customs,

allowing for Guerriere to arrest Mr. Rodriguez despite Guerriere's failure to comply therewith

for purposes of Guerriere's irreparably flawed reasonable cause determination that Mr.

Rodriguez had allegedly committed the underlying crimes (e.g. (1) Guerriere's failure to secure

and photograph the alleged inextricably connected criminal instrument ("Ms. Cele's motor

vehicle), which Guerriere claimed Mr. Rodriguez used in the underlying criminal activity,

despite such securing and photographing being mandated by the NYPD's policing policies,

practices, protocol, procedures and customs, or (2) the NYPD's inadequate supervision of Guerriere's arrest of Mr. Rodriguez where the mandated verification procedure failed to verify Guerriere's failure to (a) secure the aforementioned alleged inextricably connected criminal instrument, and (b) to photograph such, where such verification process focused only on productivity (e.g. that an arrest was made).

### SEVENTH CAUSE OF ACTION

**The NYPD's Policing Practices, Policies, Procedures, Protocol and Customs Pursuant to which the Defendant Guerriere was Operating, in Arresting and Charging Mr. Rodriguez, Renders the City of New York Liable for the Defendant Guerriere's Malicious Abuse of Criminal Process of Mr. Rodriguez**

106.     Plaintiff repeats and re-states as if stated herein all averments set forth in Paragraphs "1" through "105" above.

107.     The NYPD's policing policies, practices, protocol, procedures and customs as to NYPD police officers' probable cause determinations, arrests, and charging of suspects, including Mr. Rodriguez, are so persistent and widespread that they have the force of law.

108.     The City of New York has conceded that the NYPD's policing policies, practices, protocol, procedures and customs as to NYPD police officers' probable cause determinations, arrests, and charging of suspects are so persistent and widespread that they have the force of law.

109.     Guerriere's irreparably flawed probable cause determination, arresting and charging of Mr. Rodriguez was pursuant to the NYPD's policing policies, practices, protocol, procedures and customs such that Guerriere was operating pursuant to official municipal policy.

110.     The City of New York had been informed and were aware that prior to January 2014, the NYPD's policing policies, practices, protocol, procedures and customs were such that they were resulting in the systemic deprivation of liberties of citizens and residents, including Hispanics.

111. Despite being made aware of those systemic liberty deprivations, the City of New York did not act until January 2014 to remedy those constitutional violations, thereby remaining deliberately indifferent thereto until such time.

112. The NYPD's policing policies, practices, protocol, procedures and customs, allowing Guerriere to arrest Mr. Rodriguez on less than the reasonable belief that Mr. Rodriguez engaged in the underlying criminal activity, as required under the Fourth and Fourteenth Amendments of the United States Constitution, was foreseeably violative of Mr. Rodriguez's Fourth Amendment and Fourteenth Amendment rights not to be unreasonably searched or seized.

113. The NYPD's policing policies, practices, protocol procedures and customs, allowing for Guerriere to arrest Mr. Rodriguez despite Guerriere's failure to comply therewith for purposes of Guerriere's irreparably flawed reasonable cause determination that Mr. Rodriguez had allegedly committed the underlying crimes (e.g. (1) Guerriere's failure to secure and photograph the alleged inextricably connected criminal instrument ("Ms. Cele's motor vehicle), which Guerriere claimed Mr. Rodriguez used in the underlying criminal activity, despite such securing and photographing being mandated by the NYPD's policing policies, practices, protocol, procedures and customs, or (2) the NYPD's inadequate supervision of Guerriere's arrest of Mr. Rodriguez where the mandated verification procedure failed to verify Guerriere's failure to (a) secure the aforementioned alleged inextricably connected criminal instrument, and (b) to photograph such, where such verification process focused only on productivity (e.g. that an arrest was made).

21

## JURISDICITON AND VENUE

114.   The claims asserted herein arise under federal law, namely 28 U.S.C.A. § 1332.

115.   The acts and practices complained of herein have occurred in this Judicial

District.

WHEREFORE, the Plaintiff prays for relief and judgment, as follows:

(a)   Awarding compensatory damages in favor of the Plaintiff against the Defendant

for all damages sustained as a result of the Defendant's wrongdoing, in an amount to be proven

at trial, including interest thereon;

(b)   Awarding punitive damages in favor of the Plaintiff against the Defendant for all

damages sustained as a result of the Defendant's wrongdoing, in an amount to be proven at trial;

(c)   Awarding the Plaintiff his reasonable costs and expenses incurred in this action,

including attorney's fees and expert fees;

(d)   Awarding the Plaintiff injunctive relief and/or declaratory relief; and

(e)   Granting such other further relief as the Court may deem just and proper

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: New York, New York
       April 14, 014

CARTER & ASSOCIATE
ATTORNEYS, PLLC

BY: _____

Damond J. Carter
Attorney for the Plaintiff
224 West 35th Street, Suite 512
New York, New York 10001
(212) 216-9314 Telephone
(888) 711-4420 Facsimile

22